**HAUSFELD LLP**
Brent W. Landau
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 985-3270
Facsimile: (215) 985-3271
blandau@hausfeld.com

**LITE DEPALMA GREENBERG LLC**
Steven Greenfogel
Mindee Reuben
1835 Market Street, Suite 2700
Philadelphia, PA 19103
Telephone: (267) 519-8306
Facsimile: (973) 623-0858
sgreenfogel@litedepalma.com
mreuben@litedepalma.com

[Additional counsel listed on signature page.]

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JASON ALERS and KEVIN CRAWFORD, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY d/b/a AMERICAN EDUCATION SERVICES and FEDLOAN SERVICING, PERFORMANT RECOVERY, INC, TRANSWORLD SYSTEMS, INC., and ACCOUNT CONTROL TECHNOLOGY, INC.,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT -- CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jason Alers and Kevin Crawford (together, "Plaintiffs"), individually and on behalf of classes of all those similarly situated, upon personal knowledge of the facts pertaining to Plaintiffs and on information and belief as to all other matters, and upon the investigation conducted by Plaintiffs' counsel, bring this class action complaint against the Pennsylvania Higher Education Assistance Agency ("PHEAA"), which does business under the trade names American Education Services ("AES") and FedLoan Servicing ("FedLoan"), Performant Recovery, Inc. ("Performant"), Transworld Systems, Inc. ("Transworld"), and Account Control Technology, Inc. ("Account Control") (collectively, "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      As of December 2019, more than 44 million Americans had outstanding student loan debt totaling $1.6 trillion. This debt is managed by student loan servicers and debt collectors who service and collect on loans on behalf of creditors. These third parties are responsible for, among other things, collecting payments on a loan, advising borrowers on resources and benefits to better manage their student loan obligations, responding to customer service inquiries, and performing other administrative tasks associated with maintaining a loan.

2.      Defendant PHEAA is a student loan servicer and manages 20 percent, or about $425 billion, of Americans' outstanding student loan debt. Performant, Transworld, and Account Control (collectively, "Debt Collector Defendants") are debt collectors located in California who have contracted with PHEAA to collect student loan debts on PHEAA's behalf.

3.      Many borrowers struggle to make their student loan payments. Out of 44 million American borrowers, more than one million have student loans that enter default each year. A student borrower's loans are generally in default if he or she fails to make a student loan payment for a nine-month period. In the event of default, the guarantor of a student loan or a third-party

acting on its behalf, such as a student loan servicer or debt collection agency, may have a contractual right to collect on the underlying debt by garnishing the borrower's wages.

4.     Federal and state laws exist to protect defaulted borrowers by, among other things, limiting the garnishment rate. Those laws generally provide that a maximum of between 15% and 25% of borrowers' disposable pay may be garnished. There is, however, a lower cap in place for borrowers whose student loans are guaranteed or serviced by PHEAA.

5.     The Pennsylvania Higher Education Assistance Agency Act ("Act"), which established PHEAA, confers on PHEAA the power to garnish wages for the loans it guarantees or services, but explicitly states "**under no circumstances may an amount in excess of *ten percent* of the pay of an obligor be subject to [garnishment] during any given pay period**."[1]

6.     Separate and apart from the garnishment rate, the Act also bars PHEAA from assigning its wage garnishment authority to third parties. Specifically, the Act provides that PHEAA's power to garnish wages "**may not be *assigned* to any other person or agency**[.]"[2]

7.     Notwithstanding these unambiguous limitations of the Act, PHEAA routinely garnishes student borrowers' wages at 15% (instead of up to 10%) in violation of its enabling legislation to the detriment of hundreds of thousands of borrowers across the United States. This conduct is unlawful and *ultra vires*.

8.     Since PHEAA cannot confer upon an agent rights and responsibilities it does not itself possess, wage garnishment executed by the Debt Collector Defendants at rates above 10% are unlawful for the same reason. In fact, since the Act outright bars PHEAA from assigning its

---

[1] 24 PA. CONS. STAT. § 5104(11) (emphasis added).

[2] *Id.* (emphasis added).

wage garnishment authority, the Debt Collector Defendants' have no ability to garnish at *any* wage garnishment rate.

9.      In their communications with Plaintiffs and other similarly situated borrowers, Defendants fail to disclose these important protections for student loan borrowers established by the Commonwealth of Pennsylvania. Instead, Defendants represent that they have authority to garnish wages at the higher rates, that PHEAA may lawfully assign its wage garnishment authority to third parties, and that the Debt Collector Defendants are authorized to exercise such authority lawfully—none of which is true.

10.     As a direct and proximate result of Defendants' disregard for these limitations on PHEAA's inherent wage garnishment authority, Plaintiffs and other similarly situated borrowers reasonably believed Defendants' representations regarding their wage garnishment authority, they took no steps to challenge Defendants' authority to garnish their wages, and repayment of their student loans was unilaterally accelerated or collected by PHEAA agents who had no lawful or independent wage garnishment authority. Plaintiffs and the classes of borrowers they seek to represent were harmed thereby and, with respect to borrowers whose wages are still being garnished, that harm is ongoing.

11.     Plaintiffs, individually and on behalf of the proposed classes, seek money damages and injunctive relief for Defendants' unlawful conduct. Specifically, Plaintiffs allege common law claims against Defendants for negligence, negligence *per se*, unjust enrichment, and conversion under California and Pennsylvania law, as set forth in more detail below. Plaintiffs also allege statutory violations under the Fair Debt Collection Practices Act ("FDCPA"),[3] California's

---

[3] 15 U.S.C. § 1692, *et seq.*

Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"),[4] California's Unfair Competition Law ("UCL"),[5] Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"),[6] and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[7]

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction over Count I, the FDCPA claim asserted by Plaintiff Crawford and Class B against the Debt Collector Defendants pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States. This Court has supplemental jurisdiction over the remaining claims, pursuant to 28 U.S.C. § 1367, because they share a common nucleus of operative facts with Count I.

13.    Alternatively, this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, there are more than 100 members of the classes defined and proposed herein, less than two-thirds of class members are citizens of Pennsylvania, and minimal diversity exists as some class members are citizens of a State different from one or more Defendants.

14.    This Court has personal jurisdiction over PHEAA, because it is incorporated under the laws of the Commonwealth of Pennsylvania, transacts business within the District, including from an office in Chester, Pennsylvania, and maintains its principal place of business in Pennsylvania. This Court has personal jurisdiction over the Debt Collector Defendants, pursuant

---

[4] Cal. Civ. Code § 1788, *et seq.*

[5] Cal. Bus. & Prof. Code § 17200, *et seq.*

[6] 73 PA. CONS. STAT. § 2270.1, *et seq.*

[7] 73 PA. CONS. STAT. § 201-1, *et seq.*

to the Pennsylvania long-arm statute,[8] because each of them contracted with PHEAA within the Commonwealth to provide debt collection services and thus transact business in Pennsylvania. Further, at all times relevant hereto, the Debt Collector Defendants have been registered with the Commonwealth as foreign corporations authorized to conduct business in Pennsylvania.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) because Defendants are subject to the Court's personal jurisdiction with respect to this action and thus reside within the District.

## PLAINTIFFS

16.     Plaintiff Jason Alers is a Pennsylvania citizen residing in Scranton, Pennsylvania. In 2017, Mr. Alers was in default on a student loan and was advised by PHEAA (through his employer's human resources department) that his wages would be garnished, the rate at which they would be garnished, and that such garnishment was lawful. Mr. Alers' wages were ultimately garnished from August 2017 through June 2018 at a rate in excess of 10% of his pay during a given pay period. Based on PHEAA's material misrepresentations, omissions, and conduct, as well as its superior position of knowledge and authority with respect to student loans, Mr. Alers believed that it was lawful for PHEAA to garnish his wages at a rate in excess of 10% of his pay. In reliance thereof, Mr. Alers took no steps to challenge garnishment of his wages; had he known the truth, Mr. Alers would have challenged PHEAA's garnishment of his wages sooner and before any money was taken from him. Mr. Alers' student loan is currently in good standing and in repayment. At all times relevant hereto, Mr. Alers student loan was serviced by PHEAA acting through the trade name AES.

---

[8] 42 Pa. Cons. Stat. § 5322(a)–(b).

6

17.     Plaintiff Kevin Crawford is a Montana Citizen residing in Bozeman, Montana. In 2019, Plaintiff Crawford was in default on his student loan and was advised by Defendants that his wages would be garnished, at a rate not exceeding *15%* of his pay, and that such garnishment was lawful. Plaintiff Crawford's wages were ultimately garnished from January 2020 to February 2020, when he was laid off, at a rate in excess of 10% of his pay during a given pay period. Relying on PHEAA's material misrepresentations, omissions, and conduct, as well as PHEAA's superior position of knowledge and authority with respect to student loans, Mr. Crawford believed that it was lawful for PHEAA, through the use of its agent the Debt Collector Defendant Performant, to garnish his wages at a rate in excess of 10% of his pay. In reliance thereof, Mr. Crawford took no steps to challenge garnishment of his wages; had he known the truth, Mr. Crawford would have challenged garnishment of his wages sooner and perhaps before any money was taken from him. Plaintiff Crawford's student loan remains in default and, when he resumes working, he reasonably believes that his pay will once again be subject to garnishment. At all times relevant hereto, Mr. Crawford's student loan was serviced by PHEAA acting through the trade name AES, and his wages were garnished by Defendant Performant acting on PHEAA's behalf as its agent.

## DEFENDANTS

18.     Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA") was created in 1963 by the Pennsylvania Higher Education Assistance Agency Act,[9] as a public corporation tasked with improving higher education opportunities for Pennsylvanians by funding student loans and grants. Its principal place of business is at 1200 North Seventh Street, Harrisburg, Pennsylvania 17102-1444. It is a citizen of the Commonwealth. Over time, PHEAA has dramatically shifted its business model from a Pennsylvania-focused business to a national servicer

---

[9] 24 PA. CONS. STAT. §§ 5101–5112.

of student loans. As of June 30, 2018, PHEAA was servicing $425 billion of assets, or 20% of the United States' student debt, on its systems.[10]

19.    PHEAA's student loan servicing business is conducted under one of two trade names: (1) FedLoan Servicing ("FedLoan"), which is "one of the four primary servicers for the nation's federally-owned student loan portfolio," and (2) American Education Services ("AES"), "one of the largest third-party loan servicers in the country."[11] Using the trade name FedLoan, PHEAA services federal loans held by the DOE that originated under the Federal Direct Loan program and services Federal Family Education Loan Program ("FFELP") loans owned by the federal government. Using the trade name AES, PHEAA services private (non-federally guaranteed) loans and federally guaranteed loans originated under the (now-discontinued) FFELP program that are owned by private companies. Regardless of the trade name used, Plaintiffs' loans were serviced by PHEAA.

20.    Defendant Performant Recovery, Inc. ("Performant") is a California corporation with its principal place of business located at 333 North Canyons Parkway, Suite 100, Livermore, California 94551. Performant does business in Pennsylvania. Its registered agent and office are located at 1635 Market Street, Philadelphia, PA 19103. Performant is engaged in the business of a collection agency, using wage garnishment to collect consumer debts originally owed to others.

21.    Defendant Transworld Systems, Inc. ("Transworld") is a California corporation with its principal place of business located at 150 North Field Drive, Suite 200, Lake Forest, Illinois 60045. Transworld does business in Pennsylvania. Its registered agent is CT Corporation System located at 1515 Market Street, Number 1210, Philadelphia, PA 19102. Transworld is

---

[10] *2019 Student Aid Handbook for Legislators*, Pennsylvania Higher Education Assistance Agency, https://www.pheaa.org/about/pdf/handbook-legislators.pdf (last visited April 24, 2020).

[11] *Id.*

8

engaged in the business of a collection agency, using wage garnishment to collect consumer debts originally owed to others.

22.      Defendant Account Control Technology, Inc. ("ACT") is a California corporation with its principal place of business located at 21700 Oxnard Street, Suite 1400, Woodland Hills, California 9136. ACT does business in Pennsylvania. Its registered agent is CT Corporation System, located at 600 N 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101-1071. ACT is engaged in the business of a collection agency, using wage garnishment to collect consumer debts originally owed to others.

## FACTUAL ALLEGATIONS

### A.      The Student Loan Debt Crisis

23.      Since around 1980, the cost of obtaining a higher education has risen over seven hundred percent. Today, over 43 million adult Americans—roughly one-sixth of the U.S. population older than age 18—carry a federal student loan and owe $1.5 trillion in federal student loan debt, plus an estimated $119 billion in student loans from private sources that are not backed by the government. College debt is even more concentrated among young people: an estimated one-third of all adults ages 25 to 34 have a student loan.

24.      The escalating student loan crisis has limited borrowers' professional and personal choices. Indeed, during the life of a student loan, an individual with higher student debt is more likely to forgo home ownership than a comparable individual without student loan debt. One study found that households with an average student debt burden experienced a lifetime wealth loss of nearly $208,000 compared to households without student debt.[12] This largely occurs because borrowers cannot put money into retirement savings or invest in a home during the life of the loan.

---

[12]   Robert  Hiltonsmith,  *How  Student  Debt  Reduces  Lifetime  Wealth*,  August  2013,

25.    Many borrowers also struggle to make payments on their student loans. In 2017, the Federal Reserve Bank of New York has found "11 percent of the [then] $1.325 trillion of federal student loans outstanding is severely delinquent or in default, higher than the mortgage default rate at the peak of the foreclosure crisis in 2010."[13] In August 2019, 10.8 percent of aggregate student debt was severely delinquent or in default.[14] The student loan default rate has not improved and is not expected to improve in the future. An analysis of data on student debt and repayment assessed by the Brookings Institution found that nearly 40 percent of borrowers are expected to default on their student loans by 2023.[15]

26.    A significant number of borrowers who have defaulted on their student loans remain in default long enough to be subject to wage garnishment, which is a procedure through which some portion of a person's earnings is required to be withheld for the payment of a debt. One study found that "[f]rom July 2015 to September 2018 . . . debt collectors nabbed $2.3 billion in wage garnishments, according to [U.S. Department of Education] data. And after a dip in mid-2017, garnishments rose to a record high for the three-year period studied, hitting $230 million in the third quarter of 2018."[16] The garnished wages of those workers amounts to over $2,000 each

---

https://www.demos.org/sites/default/files/publications/AtWhatCost.pdf (last visited April 24, 2020).

[13] Michelle Conlin, *Student loan borrowers, herded into default, face a relentless collector: the U.S.*, Reuters, July 25, 2017, https://www.reuters.com/investigates/special-report/usa-studentloans/ (last visited April 24, 2020).

[14] Fed. Reserve Bank of New York, *Quarterly Report on Household Debt and Credit*, Aug. 2019, https://www.newyorkfed.org/medialibrary/interactives/householdcredit/data/pdf/hhdc_2019q2.pdf (last visited April 24, 2020).

[15] Judith Scott-Clayton, *The Looming Student Default Crisis is Worse Than We Thought*, Brookings Institution, Jan. 11, 2018, https://www.brookings.edu/research/the-looming-student-loan-default-crisis-is-worse-than-we-thought/ (last visited April 24, 2020).

[16] Andrew Pentis, *Student Loan Defaulters Suffering More Wage Garnishment: Study*, Apr. 22, 2019, https://studentloanhero.com/featured/student-loan-defaulters-suffering-more-wage-

year on average,[17] and borrowers who are most likely to have their wages be garnished only earn between $25,000 and $40,000 annually.[18]

27.    The impact of wage garnishment on employees extends beyond their paychecks. ADP, a human resources company, studied payroll data from 2013 and found that employees feel garnishment is "humiliating" because "employers have [to] become involved in their otherwise private struggles."[19] Additionally, "[e]mployees in this position may feel they no longer work for themselves and their futures, but for the institutions to which they are indebted. Stress and anxiety are natural outcomes."[20]

**B.    PHEAA and Its Wage Garnishment Practices**

28.    The Act that created PHEAA in 1963 conferred upon the public corporation twelve powers and duties.[21] One of those powers is "[t]o execute by writ of execution upon wages, salaries or commissions in the hands of an employer or any other person in order to enforce money judgments for the repayment of all loans authorized, serviced, insured, made, funded or guaranteed under this act or Federal law[.]"[22]

---

garnishment-study/ (last visited April 24, 2020).

[17] Steven L. Willborn, *Indirect Threats to the Wages of Low-Income Workers: Garnishment and Payday Loans*, 45 STETSON L. REV. 35, 37–38 (2015) (estimating that the wages of "between five and eleven million workers" are garnished each year).

[18] Ahu Yildirmaz & Mita Goldar, *Garnishment: The Untold Story*, ADP RESEARCH INSTITUTE 8 (2014), https://www.adp.com/tools-and-resources/adp-research-institute/insights/~/media/RI/pdf/Garnishment-whitepaper.ashx (last visited April 24, 2020).

[19] *Id.* at 6.

[20] *Id.*

[21] 24 PA. CONS. STAT. § 5104.

[22] 24 PA. CONS. STAT. § 5104(11).

29.    The Commonwealth of Pennsylvania, however, tempered this power by barring PHEAA from assigning its authority to garnish wages and by restricting the rate at which it is authorized to garnish borrowers' wages:

> Provided, however, That such power of execution **may not be assigned** to any other person or agency nor be employed for any other purpose by the agency. Such power of execution may be exercised at the discretion of the agency, but **under no circumstances may an amount in excess of ten percent of the pay of an obligor be subject to execution during any given pay period.**[23]

30.    Despite these limitations, which exist for the protection of borrowers, PHEAA and the Debt Collector Defendants garnish borrowers' wages in excess of ten percent of their pay. For example, in certain Administrative Wage Garnishment orders to borrowers' employers, PHEAA directed employers to deduct an amount that does not exceed fifteen percent (15%) of the debtor's disposable pay. In fact, on the AES website itself, PHEAA explicitly states that it is allowed "to garnish up to 15% of [a borrower's] take home pay as a means of recouping the outstanding balance of [his/her] loans."[24]

31.    Moreover, PHEAA routinely assigns its power of garnishment to Debt Collector Defendants.

## CLASS ACTION ALLEGATIONS

32.    Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs seek certification of the following nationwide classes ("Class" or "Classes"):

> **Class A:** All persons residing in the United States whose pay was garnished by PHEAA during the Class Period at a rate higher than 10% during any given pay period.
> Class Representatives: Jason Alers and Kevin Crawford

---

[23] *Id*. (emphasis added).

[24] American Education Services, *PHEAA Default FAQ*, https://www.aessuccess.org/manage/tools_and_resources/FAQ/loan_default_faq.shtml (last visited April 24, 2020).

**Class B:** All persons residing in the United States whose pay was garnished by a Debt Collector Defendant acting on behalf of PHEAA during the Class Period.
Class Representative: Kevin Crawford

The Class Period begins six years prior to the date of filing this pleading and ends on the date judgment is entered.

33.     Specifically excluded from the Classes are (i) Defendants; (ii) Defendants' officers, directors, agents, trustees, representatives, employees, principals, servants, partners, and joint-venturers; (iii) any entities controlled by Defendants; (iv) Defendants' heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants, their officers, or their directors; and (v) the judge assigned to this action and any member of the judge's immediate family.

34.     Each of the Classes is so numerous that joinder of all members is impracticable. While the exact number of persons belonging to Class A or Class B ("Class Members") is unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the wages of at least thousands of geographically dispersed members of each Class were garnished by PHEAA at a rate in excess of 10% of their pay during a pay period or by an agent of PHEAA.

35.     Plaintiffs' claims are typical of the claims of the other members of the Classes. Plaintiffs and the members of the Classes sustained damages arising out of Defendants' common course of conduct in violation of the law as described herein. The injuries and damages of each member of the Classes were directly caused by Defendants' wrongful conduct in violation of the law as alleged herein.

36.     Plaintiffs will fairly and adequately protect the interests of the members of the Classes and have retained counsel competent and experienced in class action litigation.

37.     Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting solely individual members of the Classes. Among the questions of law and fact common to the Classes are:

a.     Whether Defendants garnished Plaintiffs and Class Members' wages in excess of 10% of their pay during a pay period;

b.     Whether PHEAA's enabling statute prohibits it from garnishing borrowers' wages at a rate in excess of 10% of their pay during any given pay period;

c.     Whether the Debt Collector Defendants garnished Plaintiffs and Class Members' wages based on authority PHEAA purported to assign it;

d.     Whether PHEAA's enabling statute prohibits it from assigning its wage garnishment authority to third parties, such as the Debt Collector Defendants;

e.     Whether Defendants' representations to Plaintiffs and Class Members regarding their wage garnishment authority were false, deceptive, or misleading, or created a likelihood of confusion and misunderstanding;

f.     Whether Defendants owed a duty to Plaintiffs and Class Members to use reasonable care in garnishing their wages consistent with Defendants' authority under the law, and whether Defendants breached that duty by garnishing Plaintiffs Class Members' wages, as described herein;

g.     Whether Plaintiffs and Class Members conferred an economic benefit on Defendants, and whether Defendants were unjustly enriched thereby;

h.     Whether Defendants were entitled to garnish, possess, or maintain control over the monies they garnished from Plaintiffs and Class Members' wages, and whether Defendants' wage garnishment constitutes conversion;

i.    Whether the Debt Collector Defendants' conduct, as alleged herein, constitutes violations of the FDCPA or California's Rosenthal Act or UCL;

j.    Whether Defendants' conduct, as alleged herein, constitutes violations of Pennsylvania's FCEUA or UTPCPL;

k.    Whether Plaintiffs and Class Members were damaged as a proximate result of Defendants' wage garnishment practices as described herein; and

l.    The appropriate measure of Plaintiffs and Class Members' damages and the scope and nature of declaratory or injunctive relief.

38.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class Members is impracticable. The prosecution of separate actions by individual members of the Classes would impose heavy burdens upon the courts and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Classes. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

39.    The interests of members of the Classes in individually controlling the prosecution of separate actions is theoretical rather than practical. The Classes have a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The amounts at stake for Class Members, while substantial in the aggregate, are not great enough individually to enable them to maintain separate suits against Defendants. Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692, *et seq.* ("FDCPA")

40.     Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein.

41.     Plaintiff Crawford (for the purposes of this Count, "Plaintiff") asserts this claim against the Debt Collector Defendants on behalf of Class B.

42.     The Debt Collector Defendants are "debt collectors" pursuant to the FDCPA.[25]

43.     The Debt Collector Defendants collected or attempted to collect debts from Plaintiff and members of Class B.

44.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," such as "[t]he false representation of . . . the character, amount, or legal status of any debt,"  threatening "to take any action that cannot legally be taken," or use of "any false representation or deceptive means to collect or attempt to collect any debt[.]"[26] It further prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt."[27]

45.     In the course of their business dealings with Plaintiff and members of Class B, the Debt Collector Defendants affirmatively represented that they, acting on PHEAA's behalf, had the lawful authority to garnish borrowers' wages at a rate above 10%. The Debt Collector Defendants accomplished this by, among other things, asserting in Administrative Wage Garnishment orders

---

[25] 15 U.S.C. § 1692a(6).

[26] 15 U.S.C. § 1692e(2)(A), (5), (10).

[27] 15 U.S.C. § 1692f.

to have authority under the Higher Education Act,[28] to garnish wages at a rate of 15% of borrowers' disposable pay and by the act of garnishing wages.

46.     Similarly, the Debt Collector Defendants represented that PHEAA's assignment to them of the power to garnish Plaintiff and Class Members' wages was lawful. This was also accomplished through the Debt Collector Defendants' issuance of Administrative Wage Garnishment orders and other means.

47.     However, at no time did the Debt Collector Defendants disclose to Plaintiff or members of Class B that the Commonwealth had, pursuant to the Act,[29] established the 10% cap on PHEAA's authority to garnish borrowers' wages and had barred its power to assign such authority to third parties, and that as a result the Debt Collector Defendants' garnishment of Plaintiff and Class Members' wages was unlawful.

48.     The Debt Collector Defendants thus violated the FDCPA by, at a minimum, employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with the intent that Plaintiff and Members of Class B rely upon such concealment, suppression or omission, in connection with the servicing of their student loans. Plaintiff did in fact rely on such deceptive acts or practices described herein.

49.     By affirmatively misrepresenting their wage garnishment authority, failing to disclose the limitations imposed on such authority by the Commonwealth of Pennsylvania, and by garnishing Plaintiff and Class members' wages without any lawful authority to do so, the Debt Collector Defendants also created a likelihood of confusion and misunderstanding that affected the public generally, and Plaintiff and Class members specifically, in violation of the FDCPA.

---

[28] 20 U.S.C. § 1095a, *et seq.*

[29] 24 PA. CONS. STAT. § 5104(11).

50.    Plaintiff and members of Class B suffered actual damages as a direct and proximate results of the Debt Collector Defendants' misrepresentations and their concealment of and failure to disclose material information.

## COUNT II
## NEGLIGENCE

51.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein.

52.    Plaintiffs Alers and Crawford assert this claim against PHEAA under Pennsylvania law on behalf of Class A. Plaintiff Crawford asserts this claim against Debt Collector Defendants under California law on behalf of Class B.

53.    Defendants owed and continue to owe a duty of care to Plaintiffs and Class Members to use reasonable care in garnishing their wages consistent with Defendants' authority under the law. This duty is independent of any duty Defendants owed as a result of contracts between them and Plaintiffs, Class Members, or other third parties.

54.    Defendants have a common law duty to prevent the foreseeable risk of harm to others, including Plaintiffs and Class Members. As a result of PHEAA's position as the servicer of Plaintiffs and Class Members' student loans, and the Debt Collector Defendants' positions as debt collectors with respect to Plaintiffs and Class Members' student loan debt, it was foreseeable to Defendants that Plaintiffs and Class Members could suffer financial harm if Defendants failed to exercise reasonable care while performing their servicing and debt collection functions. In particular, it was foreseeable that Plaintiffs and Class Members would be injured if Defendants garnished their pay at unlawfully high rates or if PHEAA purported to assign its wage garnishment authority to third parties.

18

55.     Defendants breached their duty of care and thus were negligent by failing to use reasonable care in garnishing Plaintiffs and Class Members' wages because they garnished their wages at unlawfully high rates and because the Debt Collector Defendants had no lawful authority to garnish Class Members' wages at any rate.

56.     Defendants acted wantonly, recklessly, and with complete disregard for the consequences.

57.     As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class Members have suffered substantial losses as described herein.

### COUNT III
### NEGLIGENCE PER SE

58.     Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein.

59.     Plaintiffs Alers and Crawford assert this claim against PHEAA under Pennsylvania law on behalf of Class A. Plaintiff Crawford asserts this claim against Debt Collector Defendants under California law on behalf of Class B.

60.     The Pennsylvania Higher Education Assistance Agency Act,[30] created PHEAA "to improve the higher educational opportunities of persons who are residents of this State and who are attending approved institutions of higher education, in this State or elsewhere, by assisting them in meeting their expenses of higher education in accordance with the provisions of this act and by enabling the agency, lenders and postsecondary institutions to make loans available to students and parents for postsecondary education purposes."[31]

---

[30] 24 Pa. Cons. Stat. § 5101.

[31] 24 Pa. Cons. Stat. § 5102.

61.     The Act conferred upon PHEAA the power to garnish borrower's wages for "all loans authorized, serviced, insured, made, funded or guaranteed under this act or Federal law[.]"[32]

62.     If Defendant exercises its power to garnish a borrower's wages, the Act mandates that "under no circumstances may an amount in excess of ten percent of the pay of an obligor be subject to execution during any given pay period."[33]

63.     Defendants garnished the wages of Plaintiffs and members of Class A at a rate in excess of ten percent per pay period, as described herein, in clear violation of the Act. In addition, PHEAA purported to assign its wage garnishment authority to the Debt Collector Defendants who, in turn, garnished the wages of Plaintiff Crawford and members of Class B, as described herein, in clear violation of the Act.

64.     Additionally, the Act expressly states that PHEAA's power to garnish wages "may not be assigned to any other person or agency[.]"[34]

65.     PHEAA purported to assign its wage garnishment authority to the Debt Collector Defendants who, in turn, garnished the wages of Plaintiff Crawford and members of Class B, as described herein, in clear violation of the Act.

66.     Defendants' violations of the Act constitute negligence *per se*.

67.     Plaintiffs and Class Members are within the class of persons that the Act was intended to protect.

68.     The harm that occurred as a result of Defendants' wage garnishment activities is the type of harm the Act was intended to guard against.

---

[32] 24 PA. CONS. STAT. § 5104(11).

[33] *Id.*

[34] *Id.*

69.     As a direct and proximate result of Defendants' negligence *per se* under the Act, Plaintiffs and Class Members have suffered, continue to suffer, and will suffer, injuries, damages, and harm as set forth herein.

## COUNT IV
## UNJUST ENRICHMENT

70.     Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein.

71.     Plaintiffs Alers and Crawford assert this claim against PHEAA under Pennsylvania law on behalf of Class A. Plaintiff Crawford asserts this claim against Debt Collector Defendants under California law on behalf of Class B.

72.     Defendants have unlawfully benefited from the misconduct alleged herein.

73.     PHEAA unlawfully garnished the wages of Plaintiffs and Class A members at rates above ten percent and, with respect to loans it originated, retained that money and, with respect to loans it serviced, received loan servicing fees.

74.     Defendants unlawfully garnished the wages of Plaintiff Crawford and Class B members at rates above ten percent and received loan servicing fees.

75.     Similarly, Defendants' garnishment of Plaintiff Crawford and Class B members' wages was predicated on an unlawful assignment from which Defendants received loan payments and servicing fees.

76.     Defendants' financial benefits resulting from the unlawful and inequitable acts are traceable to their practice of garnishing Plaintiffs and Class Members' wages at unlawfully high rates or pursuant to unlawful assignments of wage garnishment authority.

77.     Plaintiffs and Class Members have conferred upon Defendants an economic benefit that resulted from the unlawful garnishment of their wages to the economic detriment of Plaintiffs and Class Members.

78.     The economic benefit of accelerated loan payments and loan servicing fees derived by Defendants through garnishing Plaintiffs and Class Members' wages is a direct and proximate result of Defendants' unlawful conduct.

79.     The economic benefits derived by Defendants rightfully belong to Plaintiffs and Class Members.

80.     It would be inequitable under unjust enrichment principles under the law of California and Pennsylvania for Defendants to be permitted to retain the economic benefit derived from the garnishment of Plaintiffs and Class Members' wages as a result of Defendants' unlawful conduct, as alleged herein.

81.     Defendants are aware of and appreciate the benefits bestowed upon them by Plaintiffs and Class Members.

82.     Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable proceeds they received.

83.     A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to Plaintiffs and Class Members.

**COUNT V**
**CONVERSION**

84.     Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein.

85.     Plaintiffs Alers and Crawford assert this claim against PHEAA under Pennsylvania law on behalf of Class A. Plaintiff Crawford asserts this claim against Debt Collector Defendants under California law on behalf of Class B.

86.     Defendants garnishment of Plaintiffs and Class Members' wages was unlawful and constituted a conversion of Plaintiffs and Class Members' wages.

87.     Plaintiffs assert that the monies Defendants garnished, possessed, and maintained control over, were funds that the Defendants were not entitled to and that the possession thereof constituted a conversion of Plaintiffs and Class Members' monies.

88.     As a result thereof, Plaintiffs and Class Members have suffered damages, including, but not limited to, a loss of money and other damages to be proven at trial.

**COUNT VI**
**VIOLATIONS OF CALIFORNIA'S**
**ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**
**Cal. Civ. Code § 1788, *et seq.* ("ROSENTHAL ACT")**

89.     Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein.

90.     Plaintiff Crawford (for the purposes of this Count, "Plaintiff") asserts this claim against the Debt Collector Defendants on behalf of Class B.

91.     In enacting the Rosenthal Act, the California legislature found that "[u]nfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers," and that "[t]here is need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other."[35] The purpose of the

---

[35] Cal. Civ. Code § 1788.1(a).

statute is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts[.]"[36]

92.    Under the Rosenthal Act, Plaintiff and Class B members are "debtors," their student loans are "consumer debt" and the result of a "consumer credit transaction," garnishment of their wages constitutes "debt collection," and the Debt Collector Defendants are "debt collectors."[37]

93.    The Rosenthal Act thus requires that debt collectors comply with the FDCPA. Specifically, the Rosenthal Act requires that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."[38]

94.    Because the Debt Collector Defendants violated the FDCPA, they also violated the Rosenthal Act.

**COUNT VII**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL")**

95.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein.

96.    Plaintiff Crawford (for the purposes of this Count, "Plaintiff") asserts this claim against the Debt Collector Defendants on behalf of Class B.

97.    The Debt Collector Defendants have engaged in unfair competition within the meaning of California Business & Professions Code section 17200, *et seq.*, because their conduct is unlawful, unfair, and fraudulent as herein alleged.

---

[36] Cal. Civ. Code § 1788.1(b).

[37] Cal. Civ. Code § 1788.2.

[38] Cal. Civ. Code § 1788.17.

98.     Plaintiff, members of Class B, and the Debt Collector Defendants are "persons," within the meaning of Section 17201 of the UCL.

99.     The UCL prohibits any unlawful, unfair, or fraudulent business practices or acts. The Debt Collector Defendants' conduct, as alleged herein, constitutes an unlawful, unfair and fraudulent business practice that occurred in connection with the garnishment of Plaintiff and Class members' wages.

100.    The Debt Collector Defendants' misleading and deceptive misrepresentations and omissions, concealment and suppression of material fact, as described within, violated the UCL's unlawful, unfair, and fraudulent prongs.

101.    **Unlawful prong:** The Debt Collector Defendants' conduct, as described within, violated the UCL's unlawful prong because (1) the Debt Collector Defendants had no lawful authority to garnish Plaintiff and Class Members' wages because PHEAA's enabling legislation expressly prohibited PHEAA from assigning such authority; (2) the Debt Collector Defendants had no lawful authority to garnish more than 10% of Plaintiff and Class Members' wages because PHEAA's enabling legislation expressly caps PHEAA's wage garnishment authority at that amount and PHEAA is unable to assign greater authority to the Debt Collector Defendants that it has itself; (3) the Debt Collector Defendants' conduct constitutes violations of the FDCPA and Rosenthal Act, as alleged elsewhere herein; and (4) the Debt Collector Defendants' constitutes negligence, negligence *per se*, unjust enrichment, and conversion under common law, also as alleged elsewhere herein.

102.    **Unfair prong:** The Debt Collector Defendants' conduct, as described within, violated the UCL's unfair prong because their conduct violates established public policy intended

to regulate garnishment of student loan borrowers' wages as set forth in the Act,[39] and because it is immoral, unethical, oppressive, or unscrupulous and has caused injuries to Plaintiff and Class members that outweigh any purported benefit. At all times relevant herein, the Debt Collector Defendants' conduct of misrepresenting and concealing material facts regarding Defendants' wage garnishment authority caused Plaintiff and members of Class B injury by inducing them not to challenge such unlawful conduct sooner, unlawfully accelerating repayment of their student loans, and causing losses to them. The utility of the Debt Collector Defendants' conduct in misrepresenting and concealing material facts from the Plaintiff and Class members is far outweighed by the gravity of harm to them who have now incurred losses they would not have otherwise.

103.    **Fraudulent prong:** The Debt Collector Defendants' conduct, as described within, violated the UCL's fraudulent prong by misrepresenting and concealing material information that caused, or would likely cause, Plaintiff and members of Class B to be deceived into not challenging the Debt Collector Defendants' wage garnishment action against them sooner. Plaintiff and Class members have been harmed and sustained injury as a result of the Debt Collector Defendants' fraudulent conduct in violation of the UCL.

104.    Plaintiff has standing to pursue this claim because he has been injured by virtue of a Debt Collection Defendant unlawfully garnishing his wages. Plaintiff would have challenged such wage garnishment action sooner had he not been deceived. As a direct and proximate result of the Debt Collector Defendants' actions and omissions of material facts, Plaintiff and members of Class B were unlawfully, unfairly, and fraudulently induced to not challenge Defendants' wage garnishment action sooner and they sustained losses.

---

[39] 24 PA. CONS. STAT. § 5104(11).

105.    As a direct and proximate cause of Defendants' conduct, which constitutes unlawful, unfair, and fraudulent business practices, as herein alleged, Plaintiff Crawford and Class Members have been damaged and suffered ascertainable losses, thereby entitling them to recover restitution and equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

**COUNT VIII**
**VIOLATIONS OF PENNSYLVANIA'S**
**FAIR CREDIT EXTENSION UNIFORMITY ACT**
**73 PA. CONS. STAT. § 2270.1, *et seq.* ("FCEUA")**

106.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein.

107.    Both Plaintiffs assert this claim against PHEAA on behalf of Class A. Plaintiff Crawford asserts this claim against all Defendants on behalf of Class B.

108.    PHEAA is a "creditor," the Debt Collector Defendants are "debt collectors," Plaintiffs and members of Class A and B are "consumers," and Plaintiffs and Class members' student loans are "debt" under the FCEUA.[40]

109.    Violations of the FDCPA by a "debt collector" is a *per se* violation of the FCEUA.[41] Because the Debt Collector Defendants violated the FDCPA, they also violated the FCEUA.

110.    Plaintiff additionally or alternatively alleges violations of the FCEUA independent of the FDCPA violations.

111.    With respect to "creditors," the FCEUA prohibits any "unfair or deceptive debt collection act or practice," including use of "any false, deceptive or misleading representation or

---

[40] 73 Pa. Stat. Ann. § 2270.3.

[41] 73 PA. CONS. STAT. § 2270.4(a).

means in connection with the collection of any debt," such as "[t]he false representation of the character, amount or legal status of any debt," threatening "to take any action that cannot legally be taken," or using "any false representation or deceptive means to collect or attempt to collect any debt."[42]

112.    In the course of their business dealings with Plaintiffs and Class members, Defendants affirmatively represented that they had the lawful authority to garnish borrowers' wages at a rate above 10%. They accomplished this by, among other things, asserting in Administrative Wage Garnishment orders to have such power and authority under the Higher Education Act,[43] to garnish wages at a rate of 15% of borrowers' disposable pay and by the act of garnishing wages.

113.    Similarly, Defendants represented that PHEAA had the lawful authority to assign its wage garnishment authority to the Debt Collector Defendants. This was also accomplished through Defendants' issuance of Administrative Wage Garnishment orders, by the act of assigning such authority to the Debt Collector Defendants, and other means.

114.    However, at no time did Defendants disclose to Plaintiffs or Class members that the Commonwealth had, pursuant to the Act,[44] established the 10% cap on PHEAA's authority to garnish borrowers' wages and had barred its power to assign such authority to third parties.

115.    Defendants thus violated the Pennsylvania FCEUA by, at a minimum, employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with the intent that Plaintiffs and Class Members rely upon such

---

[42] 73 PA. CONS. STAT. § 2270.4(5)(ii), (v), (x).

[43] 20 U.S.C. § 1095a, *et seq.*

[44] 24 PA. CONS. STAT. § 5104(11).

concealment, suppression or omission, in connection with the servicing of their student loans. Plaintiffs did in fact rely on such deceptive acts or practices described herein.

116.    By affirmatively misrepresenting their wage garnishment authority, failing to disclose the limitations imposed on such authority by the Commonwealth of Pennsylvania, and by garnishing Plaintiff and Class Members' wages without any lawful authority to do so, Defendants also intentionally created a likelihood of confusion and misunderstanding that affected the public generally, and Plaintiffs and the Class members specifically, in violation of the FCEUA.

117.    Defendants knew the true nature of their wage garnishment authority but concealed that information.

118.    Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate results of Defendants' misrepresentations and their concealment of and failure to disclose material information, including for example, the accelerated repayment of their student loans during periods of economic hardship.

119.    Additionally, Plaintiffs and Class Members have no meaningful choice with respect to their student loan servicing company or debt collection vendor, and thus are unable to protect themselves from Defendants' fraudulent or deceptive misconduct in the future. Defendants' violations thus present a continuing risk to Plaintiffs and Class Members.

120.    Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law; punitive damages; injunctive relief; reasonable attorneys' fees and costs; and any other just and appropriate relief under the Pennsylvania FCEUA.

121.    Plaintiffs and Class members seek to enjoin Defendants' unlawful, deceptive acts and practices as described above. Each member of the Class will be irreparably harmed unless the unlawful actions of the Defendants are enjoined, as Defendants will continue to distribute false

and misleading information regarding PHEAA's wage garnishment authority and will continue to garnish borrowers' wages at unlawfully high rates.

**COUNT IX**
**VIOLATIONS OF PENNSYLVANIA'S**
**UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**73 PA. CONS. STAT. § 201-1, *et seq.* ("UTPCPL")**

122.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein.

123.    Both Plaintiffs assert this claim against PHEAA on behalf of Class A. Plaintiff Crawford asserts this claim against all Defendants on behalf of Class B.

124.    Plaintiffs, Class members, and Defendants are "persons" within the meaning of the Pennsylvania UTPCPL.[45] Defendants are engaged in "trade" or "commerce" within the meaning of the UTPCPL.[46]

125.    The UTPCPL prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce,"[47] and defines "unfair or deceptive acts or practices" to include "[e]ngaging in any [] fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."[48]

126.    Violations of the FCEUA are a *per se* violation of the UTPCPL.[49] Because PHEAA violated the FCEUA, PHEAA has also violated the UTPCPL. Similarly, because all Defendants violated the FCEUA, all Defendants also violated the UTPCPL.

---

[45] 73 PA. CONS. STAT. § 201-2(2).

[46] 73 PA. CONS. STAT. § 201-2(3).

[47] 73 PA. CONS. STAT. § 201-3.

[48] 73 PA. CONS. STAT. § 201-2(4)(xxi).

[49] 73 PA. CONS. STAT. § 2270.5(a).

127.    Plaintiffs additionally or alternatively allege violations of the UTPCPL independent of the FCEUA violations.

128.    In the course of their business dealings with Plaintiffs and Class members, Defendants affirmatively represented that they had the lawful authority to garnish borrowers' wages at a rate above 10%. They accomplished this by, among other things, asserting in Administrative Wage Garnishment orders to have such power and authority under the Higher Education Act,[50] to garnish wages at a rate of 15% of borrowers' disposable pay and by the act of garnishing wages.

129.    Similarly, Defendants represented that PHEAA had the lawful authority to assign its wage garnishment authority to the Debt Collector Defendants. This was also accomplished through Defendants' issuance of Administrative Wage Garnishment orders, by the act of assigning such authority to the Debt Collector Defendants, and other means.

130.    However, at no time did Defendants disclose to Plaintiffs or Class members that the Commonwealth had, pursuant to the Act,[51] established the 10% cap on PHEAA's authority to garnish borrowers' wages and had barred its power to assign such authority to third parties.

131.    Defendants thus violated the Pennsylvania UTPCPL by, at a minimum, employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with the intent that Plaintiffs and Class Members rely upon such concealment, suppression or omission, in connection with the servicing of their student loans. Plaintiffs did in fact rely on such deceptive acts or practices described herein.

---

[50] 20 U.S.C. § 1095a, *et seq.*

[51] 24 PA. CONS. STAT. § 5104(11).

132.    By affirmatively misrepresenting their wage garnishment authority, failing to disclose the limitations imposed on such authority by the Commonwealth of Pennsylvania, and by garnishing Plaintiff and Class Members' wages without any lawful authority to do so, Defendants also intentionally created a likelihood of confusion and misunderstanding that affected the public generally, and Plaintiffs and the Class members specifically, in violation of the UTPCPL.

133.    Defendants knew the true nature of their wage garnishment authority but concealed that information.

134.    Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate results of Defendants' misrepresentations and its concealment of and failure to disclose material information.

135.    Additionally, Plaintiffs and Class Members have no meaningful choice with respect to their student loan servicing company or debt collection vendor, and thus are unable to protect themselves from Defendants' fraudulent or deceptive misconduct other than by litigation. Defendants' violations thus present a continuing risk to Plaintiffs and Class Members.

136.    Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law; punitive damages; injunctive relief; reasonable attorneys' fees and costs; and any other just and appropriate relief under the Pennsylvania UTPCPL.

137.    Plaintiffs and Class Members seek to enjoin Defendants' unlawful, deceptive acts and practices as described above. Each member of the Class will be irreparably harmed unless the unlawful actions of the Defendants are enjoined, as Defendants will continue to distribute false and misleading information regarding PHEAA's wage garnishment authority and will continue to garnish borrowers' wages at unlawfully high rates.

## RELIEF SOUGHT

Accordingly, Plaintiffs demand relief as follows:

A.      That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs be appointed as representatives of the Classes, and that Plaintiffs' counsel be appointed Class Counsel;

B.      Finding in favor of Plaintiffs and the Classes on all counts asserted herein;

C.      Granting actual and statutory damages, restitution, or disgorgement to Plaintiffs and the Classes;

D.      Granting compensatory damages, the amount of which is to be determined at trial;

E.      Granting pre- and post-judgment interest on all amounts awarded;

F.      Granting restitution and all other forms of equitable money relief;

G.      Granting preliminary and permanent injunctive relief;

H.      Awarding Plaintiffs and the Classes reasonable attorneys' fees and expenses and costs of suit; and

I.      Granting further relief as this Court may deem proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

**Dated:** April 29, 2020                    **HAUSFELD LLP**


_____/s/ Brent W. Landau_____
Brent W. Landau (PA Bar No. 202189)
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Telephone: (215) 985-3270
Facsimile: (215) 985-3271
blandau@hausfeld.com

**HAUSFELD LLP**
James Pizzirusso
1700 K. Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
jpizzirusso@hausfeld.com

**LITE DEPALMA GREENBERG LLC**
Steven Greenfogel
Mindee Reuben
1835 Market Street, Suite 2700
Philadelphia, PA 19103
Telephone: (267) 519-8306
Facsimile: (973) 623-0858
sgreenfogel@litedepalma.com
mreuben@litedepalma.com

**LITE DEPALMA GREENBERG LLC**
Joseph DePalma*
Jeremy Nash*
Catherine Derenze*
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 877-3820
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
jnash@litedepalma.com
cderenze@litedepalma.com
*Pro Hac Vice* Application to be filed

*Counsel for Plaintiffs*